# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| STEPHEN G. WADE,<br><br>*Plaintiff*,<br><br>v.<br><br>POLICE OFFICER JOHN or JANE DOE, OFFICER SINCLAIR DONOVAN, CHIEF FINCH, AND MAYOR LARRY SMITH,<br><br>*Defendants*. | CIVIL ACTION NO.<br>5:19-cv-00406-TES |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

Before the Court is Defendants Sinclair, Finch, and Smith's Motion to Dismiss [Doc. 10] Plaintiff's claims against them stemming from an arrest on April 9, 2019. Upon a review of the record and applicable law, the Court **GRANTS** in part and **DENIES** in part Defendants' Motion. For the reasons that follow, the Court allows Plaintiff's 42 U.S.C. §1983 claim for Fourth Amendment violations against Sinclair to proceed. The Court **DISMISSES** all of Plaintiff's other claims.

## BACKGROUND

The *pro se* Plaintiff, Steven G. Wade, has sued police officer Donavon E. Scott-Sinclair[1], Police Chief Eric Finch, and City of Montezuma Mayor Larry Smith following his arrest for felony obstruction of law enforcement, disorderly conduct, disorderly house, interference with government property, and engaging in fires and ignited objects. [Doc. 11, pp. 2—3]. During frivolity review, the Court held Plaintiff has generally pled claims of Fourth Amendment violations under 42 U.S.C. § 1983 and potential state-law claims against Defendants. [Doc. 4, p. 4].

According to the complaint, on April 9, 2019, Plaintiff was burning a sofa outside of his home "for the scrap metal." [Doc. 1, p. 5]; [Doc. 11, p. 2]. The fire department was called to Plaintiff's home as the result of Plaintiff's fire. [Doc. 1, p. 5]. Despite Plaintiff's purportedly peaceful compliance with firefighters' requests to extinguish the fire, Officer Sinclair arrived on scene and, without provocation or resistance from Plaintiff, immediately began assaulting Plaintiff, including punching him in the face and tazing him. [*Id.*] Plaintiff does not allege any wrongdoing on the part of Mayor Smith or Chief Finch. [*Id.*]; [Doc. 11, p. 2].

---

[1] In Wade's complaint, he named the police officer as both "Sinclare Donvovan" and "Sinclair Donovan." [Doc. 1, pp. 1, 5] However, Defendants state that the officer's proper name is Donavon E. Scott-Sinclair. [Doc. 11, p. 1]. Therefore, the Court will refer to the officer as Donavon E. Scott-Sinclair or Sinclair.

# DISCUSSION

## A. Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the allegations in a plaintiff's complaint. *See Acosta v. Campbell*, 309 F. App'x 315, 317 (11th Cir. 2009). A plaintiff's claims will survive a motion to dismiss if the complaint pleads "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, the Court need not accept as true "[t]hreadbare recitals of the elements of a cause of action" or "conclusory statements." *Iqbal*, 556 U.S. at 678.

To decide whether a complaint survives a motion to dismiss, district courts are instructed to use a two-step framework. *See McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018). The first step is to identify the allegations that are "no more than conclusions." *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Conclusory allegations are not entitled to the assumption of truth." *Id.* (citation omitted). After disregarding the conclusory allegations, the second step is to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal,* 556 U.S. at 679).

Although complaints filed by *pro se* litigants are to be liberally construed, *pro se* claimants have "no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Patterson v. Aiken*, 841 F.2d 386,

3

387 (11th Cir. 1988). In addition, in *pro se* cases, the Court should not "serve as de facto counsel . . . or . . . rewrite an otherwise deficient pleading in order to sustain an action." *Appleton v. Intergraph Corp.*, 627 F.Supp.2d 1342, 1348 (M.D. Ga. 2008) (quoting *GJR Invs., Inc. v. Cty. of Escambia, Fla.*, 132 F.3d 1359, 1370 (11th Cir.1998)).

B. **Claims Against Mayor Smith and Chief Finch**

Plaintiff fails to state a claim against either Chief Finch or Mayor Smith. Plaintiff makes no mention of either Defendant in his complaint, besides listing them as Defendants. [Doc. 1, p. 2]. Plaintiff does not allege any wrongdoing or explain why either Defendant might be liable for his injuries. [*Id.*]. Accordingly, Plaintiff's claims against Chief Finch and Mayor Smith are due to be dismissed.

C. **Claims Against Officer Sinclair**

Plaintiff's remaining federal claims are against Sinclair for Fourth Amendment violations under 42 U.S.C. § 1983. Plaintiff claims Sinclair continuously punched him in the face and tazed him without adequate provocation. [Doc. 1, p. 5]. Defendants argue that the claims against Sinclair are due to be dismissed because he did not use excessive force and is entitled to qualified immunity. [Doc. 11, pp. 8—16].

1. **Individual Capacity and Qualified Immunity**

When a plaintiff sues a municipal officer in the officer's individual capacity for alleged civil rights violations, the plaintiff seeks money damages directly from the individual officer. *See Kentucky v. Graham*, 473 U.S. 159 (1985). If sued "individually," a

4

municipal officer may raise an affirmative defense of good faith, or "qualified," immunity. See *Kentucky v. Graham*, 473 U.S. at 166–67. Although the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be raised and considered on a motion to dismiss. *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (citing *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). "Generally speaking, it is proper to grant a motion to dismiss on qualified immunity grounds when the complaint fails to allege the violation of a clearly established constitutional right." *Corbitt*, 929 F.3d at 1311 (citing *St. George*, 285 F.3d at 1337. "Once an officer has raised the defense of qualified immunity, the burden of persuasion on that issue is on the plaintiff." *Id*.  The qualified immunity defense shields "government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Here, as Sinclair was making an arrest, he was acting within his discretionary capacity. [Doc. 1, p. 5]; *Crosby v. Monroe Cty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). Thus, the burden of persuasion turns to Plaintiff, and Plaintiff must make two showings. *Corbitt*, 929 F.3d at 1311 (citing *Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1199–1200 (11th Cir. 2007). First, he "must establish that the defendant violated a constitutional right." *Corbitt*, 929 F.3d at 1311 (citing *Griffin,* 496 F.3d at 1199-1200). Second, he must show the

violated right was "clearly established." *Corbitt*, 929 F.3d at 1311 (citing *Griffin,* 496 F.3d at 1199-1200). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Corbitt*, 929 F.3d at 1311 (citing *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)).

The use of excessive force in making an arrest violates the Fourth Amendment. *Thornton v. City of Macon,* 132 F.3d 1395, 1400 (11th Cir. 1998). The Eleventh Circuit has held, "[t]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation." *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1248 (11th Cir. 2004). In determining the objective reasonableness of the use of force, the Court should look at "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to flee." *MacMillan v. Roddenberry*, 432 F. App'x 890, 895 (11th Cir. 2011). The Court also considers the "relationship between the need [for force] and [the] amount of force used" and the "extent of the injury inflicted" on Plaintiff. *Mobley v. Palm Beach Cty. Sheriff Dep't*, 783 F.3d 1347, 1353 (11th Cir. 2015)

However, the Eleventh Circuit has consistently held that the "application of de minimis force in making arrest, without more, will not support a claim for excessive

force in violation of the Fourth Amendment." *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000) "A minimal amount of force and injury . . . will not defeat an officer's qualified immunity in an excessive force case." *Id.* at 1258.

Here, taking Plaintiff's complaint as true, as the Court is constrained to do, the amount of force used was excessive. Plaintiff alleges that Sinclair told him to put out the fire, and Plaintiff responded, "I haven't done anything." [Doc. 1, p. 5]. According to the complaint, Sinclair then "starts punching [Wade] in the face, by the time [Wade] was on [his] back on the ground. The officer started tazing [him], shouting put your hands behind your back." [*sic*] [*Id.*]. Wade then stated he was not able to put his hands behind his back because the firemen were holding him down. [*Id.*]. Wade was then flipped onto his stomach, placed in handcuffs, and drug to the police car and thrown face down into the back seat. [*Id.*]. The officer then continued to taze Wade while handcuffed inside the police car. [*Id.*]. Again, taking the allegations in Plaintiff's complaint as true, the officer's use of force was more than de minimis and unreasonable, especially since we do not know the specific crimes for which the officer was attempting to arrest Wade. [*Id.*]. The Court must also assume that Sinclair had no reason to suspect Plaintiff was dangerous or posed an imminent threat of harm because Plaintiff describes his actions as compliant and peaceful until he kicked the police car after being tazed while inside of it. [*Id.*]. Beating and tazing a non-resisting, handcuffed arrestee accused only of unlawfully igniting a fire—a non-violent crime if a crime at all—clearly violates the Fourth

Amendment. *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000) (concluding, without case law on point, that the evidence, if credited, suggested "the officers used excessive force in beating [the plaintiff] even though he was handcuffed and did not resist, attempt to flee, or struggle with the officers in any way"); *Priester v. City of Riviera Beach*, 208 F.3d 919, 927 (11th Cir. 2000) (a suspect who "did not pose a threat of bodily harm to the officers or to anyone else.... [and] was not attempting to flee or resist arrest" clearly did not warrant a dog being released to attack him). Accordingly, Plaintiff sufficiently alleged a constitutional violation that would have been known to a reasonable official in Defendant's position and that constitutional violation was clearly established at the time of the arrest.[2]

Therefore, the Court **DENIES** Defendants' motion to dismiss Plaintiff's excessive force claim. Qualified immunity for use of excessive force is not appropriate at this early stage. The Court will again examine Defendant Sinclair's claim of qualified immunity at the summary judgment stage when the Court is able to consider evidence, including properly submitted affidavits and depositions.

---

[2] Defendants correctly state Plaintiff cites no law in his response that identifies a clearly established law. [Doc. 15, p. 5]. However, the Court will *liberally construe* Plaintiff's reply [Doc. 14] to state that he can show that a federal constitutional provision or statute is so clear, and the conduct so bad, that case law is not needed to establish that the conduct cannot be lawful. *See Wells v. Cramer,* 262 F.App'x 184, 189 (11th Cir. 2008). Similar to the ruling in *Slicker,* the Court does not need previous case law to establish the alleged conduct cannot be lawful. *See also Vinyard v.Wilson,* 311 F.3d 1340, 1350 n. 18 (11th Cir. 2002) (collecting cases where Eleventh Circuit concluded the law was clearly established that the force involved was excessive in the absence of any case law).

### 2. Section 1983 and Official Capacity Liability

Plaintiff also seeks to recover damages from the City of Montezuma, apparently by suing Defendant Sinclair in his official capacity. [Doc. 1, p. 4]. In contrast to individual capacity suits, when an officer is sued under Section 1983 in his official capacity, the suit is simply "'another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. at 165 (citing *Monell v. Department of Social Servs.*, 436 U.S. 658, 690 n. 55 (1978)). Such suits against municipal officers are therefore suits directly against the city that the officer represents. *See id*. 473 U.S. at 165–66; *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985); *Monell*, 436 U.S. at 691. However, "a municipality cannot be held liable solely because it employs a tortfeasor." *Monell*, 436 U.S. at 691. Instead, in order to recover against a municipality, a plaintiff must establish that the alleged violation occurred pursuant to a custom or policy of the municipality. *Id*. at 694.

Defendants correctly state that Plaintiff failed to allege a city policy or custom led to Plaintiff's injuries. [Doc. 1, pp. 4—6]; [Doc. 11, p. 7]. Accordingly, Plaintiff has not stated a claim upon which relief may be granted. Therefore, the Court **DISMISSES** Plaintiff's claim against Officer Sinclair in his official capacity.

### D. Plaintiff's State-Law Claims

The Court noted in its frivolity review that Plaintiff could have also intended to plead state-law claims. [Doc. 4, p. 4]. However, the Plaintiff failed to describe any state-

law claims in his complaint. [Doc. 1]. Further, in Plaintiff's reply [Doc. 14], Plaintiff again does not argue any state-law claims. Accordingly, the Court **DISMISSES** Plaintiff's state-law claims—if such claims existed—for failure to state a claim upon which relief can be granted.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** in part and **DENIES** in part Defendants' Motion to Dismiss. [Doc. 10]. The Court dismisses all claims alleged against Defendants Finch and Smith.[3] Further, the Court dismisses all of Wade's state-law claims to the extent the such claims existed. However, Wade's claims against Defendant Sinclair for Fourth Amendment violations remain permissible at this early stage in the proceedings. The Court **DISMISSES without prejudice** all Wade's other claims. Finally, the Court **STAYS** this case for 90 days to allow the parties to engage in limited discovery directed at uncovering facts related to whether Defendant Sinclair is entitled to qualified immunity. At the end of the limited discovery period (or sooner), the Court will entertain a motion for summary judgment on those grounds.

**SO ORDERED**, this 25th day of February, 2020.

S/ Tilman E. Self, III<br>
**TILMAN E. SELF, III, JUDGE**<br>
**UNITED STATES DISTRICT COURT**

---

[3] Plaintiff also named "Police Officer" John or Jane Doe as a Defendant in his complaint. [Doc. 1, p. 2]. However, Plaintiff's complaint only identifies one officer, Sinclair Donovan, that could have violated Plaintiff's Fourth Amendment rights. [*Id.*, pp. 4—6]. Accordingly, Plaintiff's claims against any unnamed police officer (other than Sinclair) are therefore **DISMISSED**.