**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **STEVEN G. WADE,**<br><br>    *Plaintiff,*<br><br>**v.**<br><br>**POLICE OFFICER JOHN or JANE DOE, OFFICER SINCLAIR DONOVAN, CHIEF FINCH, AND MAYOR LARRY SMITH,**<br><br>    *Defendants.* | **CIVIL ACTION NO.**<br>**5:19-cv-00406-TES** |

**ORDER GRANTING IN PART AND DENYING IN PART**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Steven G. Wade, proceeding *pro se*, filed this 42 U.S.C. § 1983 action against police officer Donavon E. Scott-Sinclair, alleging the use of excessive force in violation of his Fourth Amendment rights during an arrest on April 9, 2019.[1] Before the Court is Defendant Sinclair's Motion for Summary Judgment [Doc. 22]. In support of his Motion, Defendant Sinclair relies upon "all pleadings, discovery and other matter[s] on file with the Court," specifically including "the deposition of [Plaintiff] Steven G. Wade" to show that no genuine issue of material fact supports Plaintiff's excessive force

---

[1] Plaintiff initially filed this action against three other defendants: Police Chief Eric Finch, City of Montezuma Mayor Larry Smith, and an unnamed individual referred to as "Police Officer." [Doc. 1, p. 2]. However, the Court dismissed all claims alleged against these parties based upon Plaintiff's failure to state a claim. *See* [Doc. 16].

claim. [Doc. 22, p. 1]. Upon review of all evidentiary support proffered by Defendant Sinclair in support of his Motion, the Court can only conclude that a genuine issue of material fact *does* exist on a single issue. For the reasons discussed below, the Court **GRANTS in part** and **DENIES in part** Defendant Sinclair's Motion for Summary Judgment [Doc. 22].

## BACKGROUND

### A.   Procedural Standards

On October 11, 2019, Plaintiff filed this action against police officer Donavon E. Scott-Sinclair, Police Chief Eric Finch, City of Montezuma Mayor Larry Smith, and an unidentified police officer, for their alleged involvement in the events surrounding his arrest on charges related to various state law offenses.[2] *See* [Doc. 1]; [Doc. 22-1, pp. 9–10]. During frivolity review, the Court, in light of Plaintiff's *pro se* status, liberally construed his Complaint to find that Plaintiff had "generally pled claims of, but not limited to, excessive force, unlawful detention, and false arrest under 42 U.S.C. § 1983 and potential state-law claims against Defendants." [Doc. 4, pp. 3–4].

---

[2] Specifically, Plaintiff was arrested on the following charges: (1) setting an uncontrolled fire, in violation of O.C.G.A. § 16-7-63; (2) interference with government property, in violation of O.C.G.A. § 16-7-24; (3) felony obstruction of law enforcement, in violation of O.C.G.A. § 16-10-24; (4) disorderly house, in violation of O.C.G.A. § 16-11-44; and (5) disorderly conduct, in violation of O.C.G.A. § 16-11-39. [Doc. 22-1, pp. 9–10].

All Defendants moved to dismiss the claims against them based upon an alleged failure to state a claim. [Doc. 10]; [Doc. 11]. In the alternative, they each raised the defense of qualified immunity. [Doc. 11, pp. 8–11]. The Court dismissed all claims in this action, except Plaintiff's excessive force claims against Defendant Sinclair. *See* [Doc. 16]. Accordingly, the Court stayed the case[3] to allow the parties to engage in limited discovery related to whether Defendant Sinclair is entitled to qualified immunity. [*Id.* at p. 10]. After discovery, Defendant Sinclair filed this Motion for Summary Judgment. [Doc. 22]. In turn, the Court sent Plaintiff a Notice [Doc. 24] informing him of the timeframe for which he had to file his response to Defendant Sinclair's Motion.[4]

Furthermore, in this Notice, the Court instructed Plaintiff (quite clearly) to file his response in compliance with Local Rule 56. [Doc. 24]. In brief, Local Rule 56 requires that "[t]he respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine dispute to be tried." Appropriately, the respondent must file a separate concise statement of material facts addressing the

---

[3] The Court initially stayed the case for 90 days to allow the parties time to engage in limited discovery. [Doc. 16, p. 10]. Then, Defendant Sinclair moved to extend the discovery deadline for an additional 60 days, largely in part to concerns regarding the Covid-19 pandemic. [Doc. 17]. The Court granted the extension, noting that discovery needed to be completed by August 7, 2020. [Doc. 18].

[4] Defendant Sinclair filed his Motion for Summary Judgment [Doc. 22] on September 4, 2020 and served it on Plaintiff by mail the same day. *See* [Doc. 23]; [Doc. 29, pp. 1–2]. The Court provided Plaintiff 30 days from this date to file a response to the Motion. [Doc. 24]. Therefore, in consideration of such notice (and Federal Rule of Civil Procedure 6(d)), Plaintiff needed to file his response by October 7, 2020.

numbered paragraphs of the moving party's statement. LR 56, MDGa; [Doc. 24]. The

statement of material facts must include references to the record that support each

statement. [*Id.*]. Plaintiff was informed that failure to respond under these conditions

could result in the Court accepting as true all factual assertions in Defendant Sinclair's

Motion. [Doc. 24.].

Despite this Notice, Plaintiff failed to respond in compliance with Local Rule 56

requirements. In fact, Plaintiff failed to file any semblance of a statement of material

facts responding to the numbered paragraphs of Defendant Sinclair's statement of

material facts. Instead, it appears that Plaintiff first attempted to respond to this Motion

by mailing Defendant Sinclair's counsel an 8-paragraph dismissal motion[5] whereby he

alleges that he "prove[d] his case with the video [evidence] and ev[i]dence of his

injur[ies]." [Doc. 29-1]. At the time, this dismissal motion was not filed with the Court,

and Plaintiff did not serve Defendant with it until after the deadline to respond had

passed.

After missing the deadline to respond by more than a month, Plaintiff filed this

dismissal motion as an attachment to his "Motion for Trial" [Doc. 30]. *See* [Doc. 30-1].

Because Plaintiff is *pro se*, the Court will liberally construe these two documents

together as Plaintiff's response to Defendant Sinclair's Motion for Summary Judgment.

---

[5] Plaintiff titles his dismissal motion: "Motion To Dismiss Summary Judgment Filed by Defendant 'And'
Plaintiff['s] Motion To Move Forward with Jury Trial." [Doc. 29-1]; [Doc. 30-1].

4

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

That said, "[a]lthough courts liberally construe *pro se* pleadings, *pro se* litigants are not

excused from procedural rules." *Maestrey v. Johnson*, NO. 5:17-CV-00068-MTT-MSH,

2020 WL 738316, at *6 (M.D. Ga. Feb. 13, 2020) (citing *McNeil v. United States*, 508 U.S.

106, 113 (1993)). Here, Plaintiff failed to file a separate and concise statement of material

facts responding to the numbered paragraphs of Defendant Sinclair's statement. In his

response, Plaintiff also failed to include any citation to the record that supports his

contention that a genuine issue of material fact may exist in this case regarding

qualified immunity.[6] *See* [Doc. 30]; [Doc. 30-1]. Such errors cannot be overlooked or

disregarded by the Court.[7]

    As a result of Plaintiff's noncompliance, the Court must now deem Defendant

Sinclair's statement of facts as undisputed, unless otherwise inappropriate. LR 56,

MDGa; [Doc. 24]. Therefore, the Court briefly details the case below in accordance with

---

[6] Once again, the Court notes that the only issue remaining in this action pertains to whether Defendant Sinclair is entitled to qualified immunity as to Plaintiff's excessive force claims against him. *See* [Doc. 16]. However, in his response, Plaintiff largely discusses circumstances completely unrelated to this issue and even this action. *See* [Doc. 30]; [Doc. 30-1]. Plaintiff also repeatedly "reminds" the Court that he brings this action against parties that have since been dismissed or were never named in his Complaint. [Doc. 30-1, pp. 2–3].

[7] When the respondent to a motion for summary judgment fails to properly respond in accordance with local rule requirements, such failure "is not a mere technicality." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (referring to analogous local rule). Another decision from this district remarked on the purpose of an earlier version of Local Rule 56, noting that "[it] is intended to instruct the parties on how best to assist the Court in identifying genuine material facts which are in dispute." *United States v. Delbridge*, No. 1:06-CV-110 (WLS), 2008 WL 1869867, at *3 (M.D. Ga. Feb 22, 2008).

Defendant Sinclair's version of events. However—and this is especially important in this action—the Court "cannot grant a motion for summary judgment based on default or as a sanction for failure to properly respond." *United States v. Delbridge*, No. 1:06-CV-110 (WLS), 2008 WL 1869867, at *3 (M.D. Ga. Feb 22, 2008) (citing *Trs. of Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Emps. v. Wolf Crane Serv., Inc.*, 374 F.3d 1035, 1039-40 (11th Cir. 2004)). Rather, Plaintiff's failure to effectively respond to Defendant Sinclair's Motion for Summary Judgment does not relieve the Court of its duty to consider the merits of the Motion. *U.S. v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). While the Court suffers from no obligation to cull the record in search of facts that support Plaintiff's excessive force claims, the Court must, at the very least, "review all of the evidentiary materials submitted in support of the motion for summary judgment." *Id.* (citing *Jaroma v. Massey*, 873 F.2d 17, 20 (1st Cir. 1989) (per curiam) ("[T]he district court cannot grant a motion for summary judgment merely for lack of any response by the opposing party, since the district court must review the motion and the supporting papers to determine whether they establish the absence of a genuine issue of material fact.")).

Therefore, while the facts presented below derive from Defendant Sinclair's statement of facts, the Court must nonetheless carefully review each record citation used in support of Defendant Sinclair's Motion to ensure that no genuine issue of material fact exists.

**B.**   <u>**Fact Summary: Defendant Sinclair's "Statement of Material Facts"**</u>

There is no dispute that in the late morning hours on April 9, 2019, Plaintiff set fire to a futon couch outside a mobile home with the intent to sell any scrap metal remnants. [Doc. 22-1, p. 1]; [Doc. 22-2, ¶ 5]. This was not a new undertaking by Plaintiff. [Doc. 22-2, ¶ 6]. In fact, Plaintiff had set fire to his possessions before with the intent to sell the resulting scrap metal. [*Id.*]. However, on this occasion, the fire caused a considerable amount of black smoke to surround the area. [*Id.* at ¶¶ 7–8]. As a result, several residents in nearby mobile homes expressed their concerns. [*Id.* at ¶¶ 9–10]. Specifically, Plaintiff's neighbor, Annette McKenzie, contacted emergency services to inform them of the situation. [*Id.* at ¶ 9].

The City of Montezuma Fire Department arrived with a fire truck to the mobile home where Plaintiff resided. [*Id.* at ¶ 11]. Upon arrival, firefighters noticed that the fire and smoke emanating from an open space between two mobile homes was quite large. [*Id.* at ¶¶ 11–12]. Furthermore, the fire's proximity to these homes alerted firefighters of a potential threat to "both property and human health." [*Id.* at ¶ 12]. One firefighter at the scene[8] noted that "[he] could feel the heat from the fire in the roadway before [he] walked up to it . . ." [*Id.* at ¶ 11]. Another firefighter approached Plaintiff and informed

---

[8] City of Montezuma Mayor Larry Smith, who serves as a volunteer firefighter for the City of Montezuma, provided this statement in a fire report made at or near the time of events of April 9, 2019. [Doc. 22-5, ¶ 8]; [Doc. 22-5, p. 5]. Defendant Sinclair attached this fire report to Larry Smith's Affidavit and submitted the documents in support of his Motion for Summary Judgment.

him that he was not permitted to engage in his present activity[9] and that the fire

department would extinguish the fire. [*Id.* at ¶¶ 14, 16].

Plaintiff contends that he assumed responsibility for the fire and retrieved a

water hose to put it out himself.[10] [Doc. 22-7, Wade Depo., p. 38:10-13; p. 41:8-9]. In

contrast, an on-scene firefighter recounts a different version of events, one in which

Plaintiff became "violent and agitated" toward the firefighter's instruction.[11] [Doc. 22-2,

¶¶ 15–17]. This firefighter perceived Plaintiff's behavior to be "threatening." [*Id.* at ¶

15].

At some point during this interaction, law enforcement was contacted. [*Id.* at ¶

18]. Defendant Sinclair, a police officer with the City of Montezuma Police Department

arrived at the scene. [*Id.* at ¶ 19]. Upon arrival, Defendant Sinclair noticed a significant

amount of black smoke in the air. [*Id.* at ¶ 20]. He first initiated contact with the

---

[9] Specifically, Defendant Sinclair states that "[t]he first firefighter on the scene told [] Plaintiff, [']You can't do this.[']" [Doc. 22-2, ¶ 14].

[10] Defendant Sinclair cites regularly to Plaintiff's deposition to support statements included in his statement of material facts. *See generally* [Doc. 22-2]. Therefore, the Court is obligated to review this deposition.

[11] Defendant Sinclair cites to the Affidavit of Defendant Louis Esh [Doc. 22-6] to establish the fact that Plaintiff behaved in a threatening and noncompliant manner when the fire department first sought to extinguish the fire. Louis Esh, a member of the City of Montezuma Fire Department (and a formerly named-defendant in this action) stated that when he first arrived at the scene he observed Plaintiff "standing on the steps of a mobile home squirting other firefighters with a hose in a threatening manner." [Doc. 22-2, ¶ 15]; [Doc. 22-6, ¶ 5]. At the time, he also observed Plaintiff "yelling in a loud voice that it was his property and he could 'do whatever the fuck' he wanted to do." [Doc. 22-2, ¶ 17]; [Doc. 22-6, ¶ 5].

individual[12] who issued a complaint about the fire and then approached Plaintiff. [*Id.* at ¶¶ 20–21]. Defendant Sinclair noted that "[t]he fire was large, not controlled, and was in danger of spreading to the other yards and houses in the immediate vicinity." [*Id.* at ¶ 22]. Upon such observations, Defendant Sinclair believed Plaintiff to have violated O.C.G.A. § 16-7-63(2), which makes engaging in certain activities related to the use of fires or ignited objects illegal.[13] [*Id.* at ¶ 22].

At this point, the Court must pause and take note that a dispute arises as to how subsequent events enfolded. As discussed earlier, the Court cannot blindly accept Defendant Sinclair's statement of facts as true without conducting an independent review of the record.[14] However, the Court does not find it beneficial to present both sides of what appears to be a classic "he said, she said" kind of dispute during its presentation of the facts. The Court will continue to summarize the facts of this case as

---

[12] Defendant Sinclair states that upon his arrival, "[h]e made contact with complainant Ms. King, who confirmed that Plaintiff was causing a disturbance and had a large fire in his yard." [Doc. 22-2, ¶ 20]. However, Defendant Sinclair first referenced that Annette McKenzie contacted emergency services about the fire. [*Id.* at ¶ 9]. In his affidavit, Defendant Sinclair refers to the complainant as "Annette King." [Doc. 22-4, ¶ 4]. The Court merely notes this apparent discrepancy to ensure an accurate recount of the facts as provided.

[13] Specifically, Defendant Sinclair believed Plaintiff to have "committed the offense of Burning of Woodlands, Brush, Fields, or other Lands; Arson of Lands, pursuant to O.C.G.A. [§] 16-7-63(2)." [Doc. 22-2, ¶ 22].

[14] *See also Jones v. Pandey*, 390 F. Supp. 2d 1371, 1374–75 (M.D. Ga. 2005) (discussing how the court could not accept the defendant's statement of facts as true solely based on local rule requirements without first conducting its own review of the record).

presented in Defendant Sinclair's statement of facts and note any discrepancies arising from the record in its analysis.

At the time, Plaintiff was using a small water hose to put out the fire. [*Id.* at ¶ 23]. According to Defendant Sinclair, Plaintiff was "cursing and being irate" as he squirted water at his feet. [*Id.* at ¶¶ 23–24]. Defendant Sinclair twice requested that Plaintiff drop the water hose, but he refused. [*Id.* at ¶¶ 25–26]. Then, Defendant Sinclair contends that he reached for Plaintiff's arm, but Plaintiff pulled it away, and the two men began to wrestle. [*Id.* at ¶ 28]. During this tussle, Defendant Sinclair claims Plaintiff grabbed his neck, and he had to use his department issued taser to administer a dry stun to Plaintiff's stomach. [*Id.* at ¶¶ 29–30].

Following the dry stun, a firefighter stepped in to assist Defendant Sinclair handcuff Plaintiff. [*Id.* at ¶ 31]. Plaintiff was asked to place his hands behind his back, and he responded: "Motherfucker I can't." [*Id.* at ¶ 32]. Defendant Sinclair eventually handcuffed[15] Plaintiff and escorted him to the patrol car; however, Plaintiff actively struggled and fought Defendant Sinclair the whole way. [*Id.* at ¶¶ 34–35]. At one point, Plaintiff dropped to the ground and pulled away from Defendant Sinclair in an attempt to flee. [*Id.* at ¶ 36]. Defendant Sinclair eventually secured Plaintiff in the rear seat of his patrol car. [*Id.*]. However, once secured, Defendant Sinclair claims that Plaintiff began

---

[15] Plaintiff claims that he contracted Hepatitis C from the use of these handcuffs because they were not sanitized. [Doc. 22-2, ¶ 44]. However, Plaintiff failed to provide any evidence to support this claim.

kicking the window of the patrol car, which prompted him to remove Plaintiff from the car and place him on the ground outside. [*Id.*].

When Defendant Sinclair attempted to place Plaintiff back inside the car, he resisted, and so Defendant Sinclair administered another dry stun to Plaintiff's stomach. [*Id.*]. Once Defendant Sinclair secured Plaintiff in the patrol car for a second time, Plaintiff continued to kick at the windows of the car, as well as curse and yell racial slurs. [*Id.*]. Defendant Sinclair transported Plaintiff to jail, where he was charged with the following offenses: (1) setting an uncontrolled fire, in violation of O.C.G.A. § 16-7-63; (2) interference with government property, in violation of O.C.G.A. § 16-7-24; (3) felony obstruction of law enforcement, in violation of O.C.G.A. § 16-10-24; (4) disorderly house, in violation of O.C.G.A. § 16-11-44; and (5) disorderly conduct, in violation of O.C.G.A. § 16-11-39. [*Id.*at ¶ 41].

## DISCUSSION

### A.   Legal Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991));

*see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The moving party bears the initial responsibility of informing the court of the basis for its motion." *Four Parcels*, 941 F.2d at 1437. The movant may cite to particular parts of materials in the record, including, "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); Fed. R. Civ. P. 56(c)(1)(A). "When the nonmoving party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material negating the opponent's claim[]' in order to discharge this 'initial responsibility.'" *Four Parcels*, 941 F.2d at 1437–38 (quoting *Celotex*, 477 U.S. at 323). Rather, "the moving party simply may show—that is, point out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Id.* (quoting *Celotex*, 477 U.S. at 324) (cleaned up). Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.*

If this initial burden is satisfied, the burden then shifts to the nonmoving party, who must rebut the movant's showing "by producing . . . relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex Corp.*, 477 U.S. at 324). The nonmoving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable or[] is not

significantly probative' of a disputed fact." *Id.* (quoting *Anderson*, 477 U.S. at 249–50). "A

mere scintilla of evidence supporting the [nonmoving] party's position will not suffice."

*Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Further, where a party fails

to address another party's assertion of fact as required by Federal Rule of Civil

Procedure 56(c), the Court may consider the fact undisputed for purposes of the motion.

Fed. R. Civ. P. 56(e)(2). However, "credibility determinations, the weighing of the

evidence, and the drawing of legitimate inferences from the facts are jury functions, not

those of a judge. *Anderson*, 477 U.S. at 255. Succinctly put,

> [s]ummary judgment is not a time for fact-finding; that task is reserved for
> trial. Rather, on summary judgment, the district court as fact all allegations
> the [nonmoving] party makes, provided they are sufficiently supported by
> evidence of record. So[,] when competing narratives emerge on key events,
> courts are not at liberty to pick which side they think is more credible.
> Indeed, if "the only issue is one of credibility," the issue is factual, and a
> court cannot grant summary judgment.

*Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020) (internal citations omitted).

Stated differently, "the judge's function is not himself to weigh the evidence and

determine the truth of the matter but to determine whether there is a genuine issue for

trial." *Anderson*, 477 U.S. at 249. "The evidence of the [nonmovant] is to be believed, and

all justifiable inferences are to be drawn in his favor." *Id.* at 255. And "if a reasonable

jury could make more than one inference from the facts, and one of those permissible

inferences creates a genuine issue of material fact, a court cannot grant summary

judgment"; it "must hold a trial to get to the bottom of the matter." *Sconiers*, 946 F.3d at 1263.

**B.**      **Defendant's Motion for Summary Judgment**

As discussed in detail above, Plaintiff failed to file a statement of material facts specifically disputing, or at the very least addressing Defendant Sinclair's statement of facts. Pursuant to local rules, the Court must accept as true all facts provided by Defendant Sinclair not specifically disputed by Plaintiff, unless doing so would be inappropriate. *See* LR 56, MDGa. However, beyond local rule requirements, the Court must also consider how the Eleventh Circuit Court of Appeals instructs lower district courts to rule on summary judgment motions. And, for purposes of ruling on this Motion, the important takeaway is that "[s]ummary judgment is appropriate where the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is *no genuine issue as to any material fact* and that the movant is entitled to judgment as a matter of law.'" *United States v. One Piece of Property, 5800 S.W. 4th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004) (quoting Fed. R. Civ. P. 56(c)). And in this case, the lessons from *One Piece of Property* dictate the outcome of Defendant's Motion for Summary Judgment.

In *One Piece of Property*, the Eleventh Circuit held that the lower district court erred in granting summary judgment by default without considering the merits of the motion. *Id.* at 1103. Accordingly, the Eleventh Circuit noted that the district court had

the responsibility to review the evidentiary materials submitted in support of the

summary judgment motion to determine the absence of a genuine issue of material fact.

*Id.* at 1101–02 (citation omitted). The underlying issue in *One Piece of Property* involved

whether police officers had the legal right to enter a suspect's home and search for

illegal drugs. *Id.* Counsel for the officers moved for summary judgment as to the issue

of the legality of the search, and attached evidentiary support to prove its argument that

the officers only entered the premise after first obtaining the suspect's valid consent to

do so. *Id.* at 1102.

Upon review of this limited record, the Eleventh Circuit found that the district

court overlooked certain statements included in a deposition attached to the summary

judgment motion that directly contradicted the basis for the motion. *Id.* at 1102–03.

Specifically, this witness's deposition suggested that the suspect did not voluntarily

consent to the search, thereby raising a genuine issue as to whether the officers entered

the suspect's premises with the legal authority to do so. *Id.* The Eleventh Circuit held

that the district court should not have granted summary judgment based on such a

record. *Id.* at 1103.

The Court takes the time to briefly recount the facts and holding in *One Piece of

Property*, as they are particularly applicable in this action, where a party similarly

moved for summary judgment and attached as evidentiary support, a witness's

deposition that directly contradicts that party's version of events.

In support of his Motion for Summary Judgment, Defendant Sinclair submitted his own affidavit, the affidavit of the City of Montezuma Mayor Larry Smith, (a volunteer firefighter), the affidavit of a firefighter employed by the City of Montezuma Fire Department, Plaintiff's deposition testimony, and records from Macon County EMS.[16] [Doc. 22-4]; [Doc. 22-5]; [Doc. 22-6]; [Doc. 22-7]; [Doc. 22-8]. While the three affidavits (and EMS record) present one version of events, Plaintiff's deposition, which Defendant attached (requiring the Court to review) presents quite another.

The first version (presented in Defendant Sinclair's statement of facts) shows that when Defendant Sinclair arrived at the scene, Plaintiff was "cursing and being irate[]" as he attempted to extinguish the fire with a small water hose. [Doc. 22-2, ¶ 23]. Defendant Sinclair requested Plaintiff drop the water hose on two different occasions, and he refused. [*Id.* at ¶¶ 25–26]. Then, according to Defendant Sinclair, he reached for Plaintiff's arm, but "[Plaintiff] instantly snatched away in active resistance." [*Id.* at ¶ 28]. They began wrestling, whereby Plaintiff grabbed Defendant's Sinclair's neck. [*Id.* at ¶

---

[16] In addition to the affidavits, deposition testimony, and EMS record, Defendant Sinclair also submitted two digital videos as exhibits. [Doc. 23]. However, Defendant cites to these exhibits only once in his Motion for Summary Judgment (in a footnote) and provides the following detail: "Defendant submitted with its motion two bystander videos of portions of the event. Defendant will not endeavor to characterize this material, but believes it should be submitted in the interest of making as complete a record as possible." [Doc. 22-1, p. 9 n.5]. Appropriately, the Court viewed these videos several times, and if such video evidence had conclusively supported Defendant's version of events, then the Court's analysis would reflect such a finding. However, the video evidence here is not so conclusive as to the singular issue in this action to warrant a grant of summary judgment. *See Scott v. Harris*, 550 U.S. 372, 380–81 (2007) (discussing how where conclusive video evidence is available the court should view the facts in a case in the light depicted by the video evidence).

29]. To gain his compliance, Defendant Sinclair used his taser to administer a dry stun to Plaintiff's stomach. [*Id.* at ¶ 30]. Relying on such facts, Defendant Sinclair contends that the force used in this altercation was reasonable under the circumstances because "Plaintiff was not obeying lawful commands from a law enforcement officer, and further, fought the officer[.]" [Doc. 22-1, pp. 11–12]. Since "Plaintiff has no recognized right to fight with a police officer effecting a valid arrest[,]" Defendant Sinclair then argues that any excessive force claim Plaintiff makes against him must necessarily fail as a matter of law. [*Id.* at p. 12]. And, if this was all of the evidence, Defendant Sinclair would be right and would win.

However, the second version, Plaintiff's version (not presented in Defendant Sinclair's statement of facts)[17] presents a much different series of events. According to Plaintiff, prior to Defendant Sinclair's arrival, he was not cursing or noticeably aggressive toward firefighters or bystanders.[18] When Defendant Sinclair arrived on the

---

[17] Defendant Sinclair does cite to Plaintiff's deposition testimony in his statement of facts when doing so supports his overall argument, i.e., that Plaintiff was combative and resisted arrest. However, Defendant Sinclair fails to address Plaintiff's deposition testimony that he initially tried to comply with Defendant Sinclair's instruction prior to Defendant's use of force.

[18] The following exchange from Plaintiff's deposition recounts the events prior to his interaction with Defendant Sinclair:

| | |
|---|---|
| Defense Counsel: | Before anything happened between you and [Defendant Sinclair], did you swear at anybody, use any bad language to Yoder or any of the other bystanders? |
| Plaintiff: | No, sir. No, sir. |
| Defense Counsel: | Did you cuss at anybody? |
| Plaintiff: | No, sir. |
| Defense Counsel: | Did you use any racial slurs on anybody? |

scene, Plaintiff testified that he complied with Defendant's second instruction to drop

his water hose.[19] Plaintiff testifies that while he had been entirely cooperative,

Defendant Sinclair essentially sucker-punched him.[20] According to Plaintiff, he cannot

---

| | |
|---|---|
| Plaintiff: | No, sir. |

[Doc. 22-7, Wade Depo., p. 58:5–12].

[19] The following exchange from Plaintiff's deposition recounts the events immediately after
Defendant Sinclair arrived on the scene:

| | |
|---|---|
| Defense Counsel: | Let me go back to - - I'm going to walk through this in chronological order. [Defendant Sinclair] comes up and he says: Get me a hose or drop the hose? |
| Plaintiff: | No, he says: Drop the hose. I said: Sir, can I finish putting the fire out? |
| Defense Counsel: | All right. |
| Plaintiff: | He says: I said drop the GD hose. I throwed my hose down. I stood once - - I said: Wait a minute, man, I ain't done nothing. And that's when he hit me in the mouth with his fist. |
| Defense Counsel: | Okay. So he - - he asks you to drop the hose, and you said: I haven't done anything. So you didn't' want to drop the hose right away? |
| Plaintiff: | I dropped the hose. I threw the hose down. |
| Defense Counsel: | As soon as he asked you to? |
| Plaintiff: | I said: Wait a minute. Can I finish putting out the fire? He said: I said drop the hose. I throwed the hose down. I stood back. Wait a minute, I ain't done nothing. That's when he hit me with his fist. |
| Defense Counsel: | All right. So he hit you in the mouth. |
| Plaintiff: | Yes, sir. Yoder witnessed this. |

[Doc 22-7, Wade Depo., pp. 59:22–60:19].

[20] The following exchange from Plaintiff's deposition recounts how Plaintiff viewed his behavior before
he was allegedly struck by Defendant Sinclair:

| | |
|---|---|
| Defense Counsel: | [Defendant Sinclair] just hauled off and hit you? |
| Plaintiff: | Yes, sir. |
| Defense Counsel: | And you were up to that point being a very cooperative citizen? |
| Plaintiff: | Yes, sir. |

[Doc. 22-7, Wade Depo., p. 61:6–10].

recall the next series of events, only that he ended up on the ground with Defendant Sinclair ordering him to place his hands behind his back."[21] Defendant Sinclair tased Plaintiff, and a firefighter assisted in securing Plaintiff's hands behind his back so that Defendant Sinclair could handcuff and arrest him. [Doc. 22-7, Wade Depo., pp. 61:13–18; 62:13–22].

Although Defendant Sinclair attached Plaintiff's deposition to his Motion for Summary Judgment, he largely disregards Plaintiff's version of events. Perhaps Defendant Sinclair believed the affidavits submitted by a law enforcement officer, the City of Montezuma Mayor, and a ranked member of the fire department established the kind of record that no reasonable jury could disbelieve, regardless of Plaintiff's deposition. *See Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019) (discussing how the lower district court erred when not accepting a litigant's sworn statements as true for

---

[21] The following exchange from Plaintiff's deposition recounts those events following Defendant Sinclair's alleged striking of Plaintiff:

| Defense Counsel: | All right. So he hits you in the mouth. And then what happened? |
| Plaintiff: | I remember he [t]ased me. He said: Put your hands behind your back. And I said: Mother fucker, I can't. They're holding them over my GD head. If I'm not mistaken, that's what I said. |
| | Then I was flipped over, handcuffed, drugged, [t]ased. But at the same time throwed (sic) on the ground. Then it got to where I couldn't even walk. |
| Defense Counsel: | Before - - before you were handcuffed, were you completely cooperative? |
| Plaintiff: | Yes, sir. Yes, sir. |
| Defense Counsel: | 100 percent cooperative? |
| Plaintiff: | Yes, sir, most respectful. |

[Doc. 22-7, Wade Depo., pp. 62:13–63:2].

purposes of summary judgment, even where the other evidence on record largely discredited such statements). However, even if this were the case, Defendant Sinclair should have raised such an argument instead of assuming the Court would either not review the evidentiary support attached to his Motion or disregard Plaintiff's deposition for some other undisclosed reason. Now, the Court is left with a classic "he said, she said" kind of dispute—the kind that is wholly inappropriate for resolution at the summary judgment stage. Accordingly, the Court cannot make credibility determinations as to the witness or party that presents a more convincing version of events. *See Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) ("It is not the court's role to weigh conflicting evidence or to make credibility determinations[.]"). It would be error for the Court to disregard Plaintiff's version of events solely because Defendant Sinclair did. Therefore, the Court must determine, when viewing the facts in the light most favorable to Plaintiff, whether there is a genuine issue of material fact as to the reasonableness of Defendant Sinclair's use of force that day.

The Court starts with the general premise that "[t]he Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002). However, this freedom does not preclude law enforcement officers from using some degree of physical force or threat to make an arrest. *Graham v. Connor*, 490 U.S. 386, 396 (1989). Therefore, all claims that law enforcement used

20

excessive force during an arrest should be analyzed under a "reasonableness standard." *Id.* at 395. This standard is an objective one and presents "the question [of] whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. Therefore, "proper application [of this standard] requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. Courts may also consider the "relationship between the need [for force] and [the] amount of force used" and the "extent of the injury inflicted" on the plaintiff. *Mobley v. Palm Beach Cnty. Sheriff Dep't*, 783 F.3d 1347, 1353 (11th Cir. 2015). However, "unprovoked force against a non-hostile and non-violent suspect who has not disobeyed instructions violates that suspect's rights under the Fourth Amendment." *Fils v. City of Aventura*, 647 F.3d 1272, 1289 (11th Cir. 2011).

In this action, Defendant Sinclair and Plaintiff offer varying accounts as to their initial encounter. Plaintiff contends that when Defendant Sinclair asked him to put down his water hose, he requested an opportunity to first put the fire out on his own. However, Defendant Sinclair again instructed Plaintiff to drop the hose, and this time, he complied. Then, according to Plaintiff, Defendant Sinclair essentially sucker-punched him. Plaintiff ended up on the ground (as to how he got there, he does not

know), and ordered to place his hands behind his head. Plaintiff responded with, "Motherfucker I can't." Defendant Sinclair then tased him "to gain his compliance."

Taking Plaintiff's sworn testimony as true, as the Court must when analyzing a motion for summary judgment, the Court must assume that Plaintiff was not violent. True, he disobeyed an order to drop a water hose *once*, but then, according to his testimony, he fully complied with Defendant Sinclair's second order. While the Court does take note that the fire at issue in this case was uncontrolled, and quite bad, it is difficult to accept that a reasonable officer (operating under Plaintiff's version of events) would find hitting Plaintiff in the mouth, after he complied with a direct order, to be a reasonable use of force. Again, viewing the facts in the light most favorable to Plaintiff, the Court concludes that there is a genuine issue of material fact as to whether a "reasonable officer" would have found Defendant Sinclair's use of force in this situation excessive.

While such a conclusion necessarily precludes the grant of summary judgment on this issue, the Court must still review whether Defendant Sinclair is nevertheless shielded from damages under the doctrine of qualified immunity. Qualified immunity applies in the setting where an officer is "acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Grider v. City of Auburn*, 618 F.3d 140, 125 n.19 (11th Cir. 2010). Accordingly, Defendant Sinclair is not liable for using excessive force if he did "not violate clearly established statutory or constitutional rights

of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). For a constitutional right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Anderson v. Creighton*, 482 U.S. 635, 640 (1987). To show that a defendant's conduct violated a clearly established law, the plaintiff will normally provide "materially similar precedent from the Supreme Court, [the Eleventh Circuit Court of Appeals], or the highest state court in which the case arose." *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018). However, the Eleventh Circuit has recognized the difficulty in identifying similar precedent in excessive force claims and has carved out a narrow exception to the aforementioned rule. *Lee*, 284 F.3d at 1198–99. Instead, a party may show "that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law." *Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000) (quoting *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997)).

Presumably in accordance with such analysis, Defendant Sinclair cites *Draper v. Reynolds*, 396 F.3d 1270 (11th Cir. 2019), for the proposition that the Eleventh Circuit has upheld the grant of qualified immunity in circumstances similar to the ones presented here. In *Draper*, there was no constitutional violation, premised on an excessive force claim, where an officer tased an arrestee who was belligerent, confrontational and

refused to obey the officer's repeated commands. 396 F.3d at 1276–77. Accordingly, the Court agrees that an officer's use of a taser on an arrestee under those facts, would not constitute excessive force. However, in this case, Plaintiff's testimony presents a very different series of events. Therefore, for this reason, *Draper* doesn't apply. Thus, Defendant Sinclair is not entitled to the protection of qualified immunity.

After concluding with this portion of the analysis, the Court turns to any excessive force claims that arose after Defendant Sinclair placed Plaintiff in handcuffs. It appears that once Plaintiff was placed under arrest, he became combative, hostile, and attempted to flee. All evidence supports such a conclusion— even Plaintiff's deposition. Once Defendant Sinclair placed Plaintiff in his patrol car, Plaintiff began to kick at the side panel of the door, near the window.[22] During this time, Plaintiff admits to threatening Defendant Sinclair and using profane language. Soon thereafter, Defendant Sinclair removed Plaintiff from the vehicle and placed him on the ground. Plaintiff alleges that Defendant Sinclair then placed him in a chokehold and administered a dry taser stun to his stomach. Presumably, this constitutes the basis for the other excessive force claim.[23] However, the record clearly shows that when Defendant Sinclair

---

[22] Defendant Sinclair contends that Plaintiff tried to kick out the windows of the patrol car, whereas Plaintiff contends he merely kicked at the door. *Compare* [Doc. 22-2, ¶¶ 36–37], *with* [Doc. 22-7, Wade Depo., p. 71:15–23]. Regardless, there is no dispute that Plaintiff was kicking at something inside the patrol car.

[23] In his Complaint, Plaintiff alleges that "[w]hen the officer got out of the car, he slammed [his right] foot in the car door and broke [his] toes." [Doc. 1, p. 6]. However, upon review of the record, Plaintiff even

attempted to place Plaintiff back into the patrol car, he actively resisted. Defendant Sinclair tased Plaintiff only after observing hostile behaviors, culminating in an attempt to resist arrest. Now, these facts more clearly align with *Draper*.

Therefore, given these facts, the Court easily concludes that Defendant Sinclair's use of a chokehold to prevent Plaintiff from fleeing the scene, as well as his subsequent use of the taser was reasonably proportionate to the difficult situation presented. While the Court echoes the notation by the Eleventh Circuit that "being struck by a taser gun is an unpleasant experience," such use does not necessarily constitute excessive force in every circumstance. *Draper*, 369 F.3d at 1278. Therefore, in light of Plaintiff's admitted dramatic change in behavior and obvious resistance, the Court finds that the minimal force used by Defendant Sinclair to effectuate an arrest did not violate Plaintiff's constitutional rights.

<u>**CONCLUSION**</u>

For the reasons discussed in detail above, the Court must consider all of the facts included in Plaintiff's deposition testimony—a deposition that Defendant Sinclair submitted in support of his Motion for Summary Judgment. Accordingly, upon review of this deposition, the Court concludes that Plaintiff's version of events on April 9, 2019 present a genuine issue of material fact as to whether Defendant Sinclair's initial use of

---

admits that EMS personnel examined his foot and noted there was no injury. [Doc. 22-7, Wade Depo., p. 77:21–26; 78:20–23]. Accordingly, the Court concludes there is no viable claim arising from this unsubstantiated allegation.

force (the alleged punch to the mouth and subsequent tasing) constitutes excessive force during a legal arrest. However, any and all excessive force claims arising after Plaintiff was handcuffed clearly presents no such issue. Therefore, the Court **DENIES in part** Defendant Sinclair's Motion for Summary Judgment [Doc. 22]. The Court will allow Plaintiff's excessive force claim relating to the punch and first tasing to proceed to a jury.[24] The Court **GRANTS** Defendant's Motion for Summary Judgment on all other claims.

 **SO ORDERED**, this 4th day of December, 2020.

S/ Tilman E. Self, III    

**TILMAN E. SELF, III, JUDGE**

**UNITED STATES DISTRICT COURT**

---

[24] As a result, the Court **terminates as moot** Plaintiff's Motion for Trial [Doc. 30].